JOSEPH, J.
Plaintiff served defendant school district as Superintendent of Adult Education for 17 years. In December, 1972, the district abolished that position effective at the end of the 1972-73 school year.[1] He was formally notified of that action by letter dated February 23, 1973, which also said: "You still retain your status as a permanent classroom teacher in the Salem School District.” He was later notified that he was to be reassigned as a classroom teacher for the next school year at a salary lower than what he had received as an administrator. In the meantime he had elected to use the grievance procedure available to him under the district’s administrative code. The factfinder found in his favor on the issues grieved, but the district’s superintendent rejected the findings.
Plaintiff accepted the classroom assignment but specifically stated, "I reserve my rights under ORS 342.845.” At that time he did not pursue his grievance, attempt to have a hearing under the Fair Dismissal Law (ORS 342.805 to 342.955) or initiate litigation. The apparent reason for his inaction was that another administrator whose position was abolished in the same reorganization had instituted litigation, which concluded with this court’s opinion in McMullen v. Dist. School Bd., 21 Or App 56, 533 P2d 812 (1975). When that case terminated, plaintiff began this proceeding.
Plaintiffs complaint, amended complaint and second amended complaint are each captioned "Breach of Contract”; the prayer in each requested a "judgment” reinstating him as an administrator and awarding him damages measured by the difference between what he would have earned as an administrator and what he was paid as a teacher in the 1973-76 school years. The case was tried to the court. After the trial the judge issued a letter opinion finding generally and *[990] on the controlling specific issues for the defendant.[2] A "judgment” was entered for defendant.
Whether the proceeding was in law or equity seems not to have been raised in the trial court. In his brief and at argument plaintiff treated it as in equity, in which our review would be de novo. Defendant treated it as an action at law, so that our review would be limited to errors of law (of which plaintiff claims none) and to determining whether there was substantial evidence to support the trial court’s judgment. We take it to be as settled as anything can be that when a party entitled to performance of a contract elects to seek the remedy of specific performance, the case is in equity. See Mohr v. Lear, 239 Or 41, 48, 395 P2d 117 (1964). Plaintiff here asserted a contract right to be reinstated to his position as administrator and asked that that obligation be specifically enforced. The complaint sounded in equity and the fact that plaintiff also sought damages for nonperformance did not convert the cause into one at law. Parlette v. Freeman, 273 Or 799, 543 P2d 675 (1975).
That plaintiffs claim was cognizable in equity and that we therefore review de novo leads immediately to a threshold question which the plaintiff raised in his brief but to which the defendant devoted no attention, *[991] perhaps because the answer has been assumed. The question is: Did the school district have a duty to attempt to transfer the plaintiff to another administrative position when it eliminated his long-held position? It is apparent that the district did make some such efforts (the adequacy of which plaintiff questions), and when the matter came to litigation the district appears to have assumed that the duty existed. In the absence of such a duty, there would be no performance required which a court could decree.
Plaintiff claimed that he had a contract right to be reassigned to an administrative position for which he was qualified and that only in the event no such position existed could he be assigned to classroom teaching. He attached a copy of his then current contract to the complaint. It is silent on the point in issue and makes no reference to any rules or regulations which might include such a duty. It appears to cover little more than is required as a minimum in a teacher’s contract by ORS 342.505. We must, then, find the asserted contract right either in the statutory teacher tenure law (ORS 342.200 and 342.805 to 342.955, now called the Fair Dismissal Law), or in the common law of Oregon as it relates to teacher tenure.
ORS 342.865(l)(j)[3] had not become effective at the time when plaintiff was notified of the elimination of *[992] Ms position, nor when he accepted Ms 1973-74 contract. ORS 342.845(2)[4] was in effect and was as applicable to Mm as it was to the plaintiff in McMullen. In that case we held that it has no application to the situation of an admimstrator whose position is eliminated in a good faith reorganization of a school district.
Plaintiff accepts McMullen, but in that case it was agreed that there was no other admimstrative position for wMch the plaintiff there could qualify. Plaintiff here rests his case on the proposition that he was and is qualified for a number of admimstrative positions but was unlawfully demed appointment to any of them. No provision of the Fair Dismissal Law as it stood in February, 1973, imposed any duty upon the defendant to attempt to transfer plaintiff to another admimstrative position, so we must turn to the case law.
Funston v. District School Board, 130 Or 82, 278 P 1075, 63 ALR 1410 (1929), decided only that the teacher tenure law as it then existed imposed no substantive or procedural limitation on a district’s dismissal of a tenured teacher for non-personal reasons, such as a lack of students in the teacher’s subject matter area. Lommasson v. School Dist. No. 1, 201 Or 71, 261 P2d 860, 267 P2d 1105 (1954), also involving a teacher of millinery as in Funston, reaffirmed the right of a school board to dismiss a teacher for reasons of economy or lack of pupils (201 Or at 85), and whether there was a duty to attempt to reassign *[993] the teacher rather than dismiss her was not involved. No cases have dealt with the problem.[5]
We hold that the law relating to teacher tenure prior to July 20, 1973, did not impose any duty on a school district to attempt to find an administrative position for which a displaced administrator could qualify and to assign him to that position in preference to assigning him to a classroom teaching position. The only contestable issue was whether the reorganization was undertaken in good faith, which is not raised in this case. To hold otherwise would expand the concept of tenure to a general rule of seniority with the consequent introduction of the practice of "bumping”, as those administrators having priority by years of service displace those who have presumably gained administrative assignments by merit and experience. That would be the adoption and enforcement of a policy which ought solely to be done by the legislature.
Affirmed.

Plaintiffs current contract was for a period ending June 15,1973, but he was a tenured teacher under ORS 342.815(5) and (8).

 "After carefully considering the evidence, the legal arguments of counsel and the authorities cited in their briefs, I am of the opinion that although Mr. Porter was especially well qualified for the administrative position which was eliminated, there was nothing available which precisely met those qualifications.
"I am further of the opinion that the District was under no duty to consider a blanket’ application for any and all administrative positions that opened up over a period of time.
"Of those positions applied for, only one, that of Coordinator of Special Services, was really appropriate, and it was filled by a person with at least equal priority and with perhaps greater qualifications.
"I feel that the District did everything that could be expected of it to find an appropriate administrative position for which Mr. Porter was qualified. Unfortunately it was unsuccessful, at least to the date of trial.
"I find for the defendant. Mr. Paulus may prepare and submit an appropriate form of order.”

ORS 342.865(l)(j):
"(1) No permanent teacher shall be dismissed except for: ******
"(j) Reduction in permanent teacher staff resulting from the district’s inability to levy a tax sufficient to provide funds to continue its educational program at its anticipated level or resulting from the district’s elimination of classes due to decreased student enrollment or reduction of courses due to administrative decision. School Districts shall make every effort to transfer teachers of courses scheduled for discontinuation to other positions for which they are qualified. Merit and seniority shall be considered in determination of a teacher for such transfer.”
This subsection was enacted by Oregon Laws 1973, ch 298, § 4, effective July 20, 1973.

ORS 342.845(2):
"No permanent teacher who has served as an administrator in a particular position for a period of three successive years in a tenure district shall be transferred to a lower paying position as an administrator or to a nonadministrative position without his consent except for the reasons for which a permanent teacher may be dismissed as provided in ORS 342.200 and 342.805 to 342.955 and in accordance with the procedures set forth in ORS 342.200 and 342.805 to 342.955 pursuant to which a permanent teacher may be dismissed.”

Schaaf v. School Dist. No. 4J, 19 Or App 838, 529 P2d 943 (1974), Sup Ct review denied (1975), involves a situation which arose after the passage of Oregon Laws 1973, ch 298, § 4, which was the source of OES 342.865(l)(j), quoted above in n 3. The bill as originally introduced did not contain the language in paragraph (j). That was inserted in committee. The key sentence relevant to the present discussion is: "School districts shall make every effort to transfer teachers of courses scheduled for discontinuation to other positions for which they are qualified.” (Emphasis supplied.) It is worth noting that the emphasized phrase is unique in that elsewhere in the Fair Dismissal Law the terms "teacher,” "permanent teacher,” and "administrator” are used without qualifying words of that sort. The legislative history reveals nothing about the meaning or intent of the sentence or the phrase. We need not and do not reach an interpretation or application of OES 342.865(l)(j) in this case.